UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE BUTTERFIELD, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY, et al.,<br><br>    Defendants. | Case No. 23-cv-01620-AMO<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 52 |

Before the Court is Plaintiff's motion to remand. The matter is fully briefed and suitable for decision without oral argument. *See* Civil L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **DENIES** the motion to remand for the following reasons.

**I.   BACKGROUND**

This case concerns the wrongful death of Charlotte Butterfield ("Decedent"). On February 15, 2023, Plaintiffs Wayne Butterfield, Sr., Wayne Butterfield, Jr., and Charlotte Duncan (Decedent's husband and children, together "Plaintiffs") filed a complaint against various corporations seeking to hold them accountable for Decedent's death on March 26, 2022, from cancer caused by asbestos exposure brought home on her husband's clothing. ECF 52-1 ("Compl.") at 5-6.[1] Defendant National Steel and Shipbuilding Company ("NASSCO") filed its Notice of Removal on April 4, 2023. ECF 1 ("NOR"). On May 3, 2023, Plaintiffs filed a motion to remand the case to California Superior Court for lack of federal subject matter jurisdiction. ECF 52 ("Motion").

---

[1] Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Plaintiffs allege only one cause of action against NASSCO, negligence for "take home" exposure. Compl. ¶¶ 164-174.[2] Mr. Butterfield was an employee of NASSCO from 1963 to 1998, and during that time he worked with and around materials containing asbestos. *Id.* ¶¶ 167-68. Toxic asbestos dust accumulated on his person and work clothing, which he brought home with him, and which exposed his wife to asbestos. *Id.* Plaintiffs argue that NASSCO was negligent in failing to prevent Mr. Butterfield from bringing home asbestos dust, which exposed members of his household to these toxins. *Id.* ¶¶ 170-71.

Defendant NASSCO removed the case under the federal officer removal statute, Title 28 U.S.C. § 1442(a). NOR ¶ 5. NASSCO's basis for removal is that it can state a colorable "government contractor" defense against Plaintiffs' claims. *Id.* NASSCO asserts that there are additional grounds for removal, including derivative sovereign immunity under *Yearsley*, federal question removal under the federal enclave doctrine in 28 U.S.C. § 1331, and the combatant activities exception. *Id.* ¶¶ 29-31. Because the Court finds that the federal officer removal statute applies to Plaintiffs' claims, the Court does not reach the Defendant's remaining arguments.

## II. LEGAL STANDARD

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court . . . where such action is pending." 28 U.S.C. § 1441(a). Under Title 28 U.S.C. § 1442(a)(1), the federal officer removal statute, a civil action filed in state court may be removed to a federal district court if the action was filed against or directed to the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . ." 28 U.S.C. § 1442(a)(1). Federal contractors may remove cases based on actions performed under color of a federal office if they assert a colorable federal defense. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). To invoke the federal officer

---

[2] As Plaintiffs facially attack subject matter jurisdiction, the Court "accept[s] the [defendant's] jurisdictional] allegations as true and draw[s] all reasonable inferences in the [removing defendant's] favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014).

removal statute, a defendant must show that the following elements are met: (1) "it is a 'person' within the meaning of the statute, (2) a causal nexus exists between [the] plaintiffs' claims and the actions [the defendant] took pursuant to a federal officer's direction, and (3) it has a 'colorable' federal defense to [the] plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing *Durham*, 445 F.3d at 1251).

Although typically the removal statute is construed against removal, the opposite is true where defendants seek removal under the federal officer removal statute. *See Leite*, 749 F.3d at 1122 ("defendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute"); *Durham*, 445 F.3d at 1252 (noting that removal rights are broader under Section 1442(a)(1) than under Section 1441 and courts are "to interpret section 1442 broadly in favor of removal"). Section 1442(a)(1) also authorizes removal without the consent of any other party. *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("Since the federal officer is the only one entitled to remove under [Section] 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court.").

"As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack." *Leite*, 749 F.3d at 1122. A "facial" attack accepts the truth of the defendant's allegations in the notice of removal but "asserts that [the allegations] are insufficient on their face to invoke federal jurisdiction." *Id.* at 1121 (citing *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004)). A "factual" attack "contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings," and requiring the defendant to come forward with "competent proof" to support its allegations. *Id.* "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the [defendant's jurisdictional] allegations as true and drawing all reasonable inferences in the [removing defendant's] favor . . ." *Id.*; *see Wilgenbusch v. Fryer-Knowles, Inc.*, No. 19-CV-05620-JST, 2019 WL 13201904, at *2 (N.D. Cal. Nov. 19, 2019).

### III. DISCUSSION

As noted above, NASSCO's removal is based in part on the federal officer removal statute,

to which Plaintiffs advance a facial challenge. To invoke the federal officer removal statute, NASSCO must show it is a "person" within the meaning of Section 1442(a)(1), it has a colorable federal defense to plaintiff's claims, and there is a causal nexus between plaintiff's claims and defendant's actions. *Leite*, 749 F.3d at 1120. The parties do not dispute that NASSCO qualifies as a "person" within the meaning of Section 1442(a)(1). ECF 61 ("Response") at 14; *see generally* Motion at 13-14, 16-17. Indeed, "courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1)." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (collecting cases). However, Plaintiffs contend that NASSCO has not shown the other two elements of the federal officer removal statute, namely that (A) NASSCO has a colorable federal defense and (B) there exists a causal nexus between actions taken pursuant to a federal officer's directions and Plaintiff's claims. The Court examines these contentions in turn.

### A. Colorable Federal Defense

NASSCO asserts that it has a colorable "government contractor" defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) and under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940). ECF 1 ¶¶ 5, 9, 29-31. Plaintiffs argue that NASSCO cannot sufficiently allege that it has a "colorable" defense. Plaintiffs contend that 1) NASSCO cannot invoke the government contractor defense; 2) NASSCO's declarations are inadmissible and do not address the facts of this case; and 3) even if they are admissible, the declarations do not support a colorable defense as to the "failure to decontaminate" negligence cause of action pled against NASSCO. Motion at 11. The Court begins by addressing the availability of the government contractor defense in this case before considering the admissibility and effect of the evidence.

#### 1. Government Contractor Defense Under *Boyle* and *Yearsley*

##### a. Legal Sufficiency of Government Contractor Defense

Plaintiffs argue that NASSCO was negligent in failing to decontaminate the person or clothing of its employee (Decedent's husband), allowing him to return home to his family covered in toxic asbestos dust. Motion at 9; Compl. ¶¶ 170-71. They argue that the government contractor defense is a *product-based* defense, and the cause of action against NASSCO is "not a product-

4

based failure to warn claim." Motion at 11. A brief accounting of the caselaw is necessary to understand the government contractor defense.

In 1940, the Supreme Court in *Yearsley* held that in certain circumstances where private contractors' actions are controlled by the Federal government, the contractors are protected by derivative sovereign immunity. Specifically, a private contractor enjoys derivative sovereign immunity when it performs acts pursuant to a valid authorization of Congress and does not exceed the scope of that authority. *Yearsley*, 309 U.S. at 20-21.

Decades later in *Boyle*, the Supreme Court recognized the government contractor defense and announced a three-factor test which precludes state law liability against a government contractor when: (1) the United States approved "reasonably precise specifications" for the defendant to follow; (2) the defendant "conformed to those specifications;" and (3) the defendant warned the United States about the dangers that were known to the defendant but not to the United States. *Boyle*, 487 U.S. at 512. The defense protects "government contractors from tort liability that arises as a result of the contractor's compliance with the specifications of a federal government contract." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015) (quoting *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011)). *Boyle* relied on *Yearsley* to conclude that the federal interest in preventing liability "exists as much in procurement as in performance contracts," noting "no basis for a distinction" between the two types of contracts. *Boyle*, 487 U.S. at 506. The Supreme Court later held that *Yearsley* is not limited to claims "arising out of property damage caused by public works projects," but rather "the contractor's performance in compliance with all federal directions." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 n.7 (2016).

Based on this authority and contrary to the Plaintiffs' arguments here, courts have repeatedly held that the government contractor defense is not limited to product liability cases. *See Leite*, 749 F.3d at 1123-24 (concluding removal of a failure-to-warn case to federal court was proper under the government contractor defense); *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008) (holding that "the government contractor defense applies not only to claims challenging the physical design of a military product, but also to the process by which such

5

equipment is produced. Accordingly, a contractor who agrees to operate a production facility pursuant to government specifications may qualify for the defense"); *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir. 1996) (finding the defense applicable to an action involving the design and manufacture, as well as "testing and installation," of a ladder on a military submarine). In *Laukat v. ABB, Inc.*, No. CV 19-09436-CJC(EX), 2019 WL 9088036, at *4 (C.D. Cal. Dec. 13, 2019), National Steel invoked the government contractor defense where the only claims against them were negligence claims for "negligently creating asbestos dust and failing to protect from asbestos dust," as plaintiffs had waived all product liability claims against the defendant. The court found that "it would defy the principle of the [government contractor] defense if a defendant-contractor was protected when it produced military equipment subject to reasonably precise federal specifications, but not when the same contractor made repairs to the same equipment subject to the same degree of federal oversight and specifications." *Id.* at *5. The court reasoned that plaintiffs failed to provide Ninth Circuit precedent providing for such a "line-drawing exercise," as the Ninth Circuit "found the government contractor defense applicable to a contract for the design, manufacture, *and installation* of an accommodation ladder on a military submarine." *Id.* at *5 (emphasis in original) (citing *Butler*, 89 F.3d at 585); *see also Ollerton v. Nat'l Steel & Shipbuilding Co.*, No. CV-231267-MWFRAOX, 2023 WL 2947544, at *1 (C.D. Cal. Apr. 14, 2023) (concluding that the defendant could raise the federal contractor defense arising from defendant's alleged negligence in performance of a service contract for "fail[ing] to protect" plaintiff from asbestos dust or warning plaintiff of its dangers).

The Plaintiffs' allegations regarding the transfer and harm of asbestos dust resemble the allegations in the cases mentioned above. See Compl. ¶¶ 167-171. And similar to the various theories of negligence described above, the negligent "take home" exposure to asbestos arose as a result of Mr. Butterfield's work for a government contractor. Plaintiffs here, as in *Laukat*, fail to provide any authority in support of the "line drawing exercise" they seek to impose. Accordingly, the Court rejects Plaintiffs' position that the government contractor defense only applies to products-based or failure to warn causes of action. If NASSCO meets the elements, it may avail itself of the military contractor defense based on a services contract under *Boyle* and *Yearsley*.

### b. Admissibility of the Evidence in Support of *Boyle* Defense

In support of its NOR and opposition to the motion to remand, NASSCO filed four substantive declarations as well as supportive exhibits to establish that it has a colorable federal defense. It provides testimony from a former Lieutenant of the U.S. Naval Reserve and current CEO of a firm specializing in research and analysis of U.S. Navy maintenance, repair, and construction (Christopher P. Herfel), a former Program Manager at NASSCO (who formerly served a Lieutenant Junior of the U.S. Navy) (Stephen B. Severs), and two former Rear Admirals of the U.S. Navy (Admirals John B. Padgett III and Roger B. Horne, Jr.). ECF 61-1 ("Herfel Dec."); ECF 61-2 ("Severs Dec."); ECF 61-4 ("Padgett Dec."); ECF 1-1 ("Horne Declaration") at 117; ECF 61-3 ("Bessette Dec."). In addition, NASSCO submitted a 2004 affidavit from a now-deceased former Rear Admiral of the U.S. Navy (Admiral Ben J. Lehmnan). ECF 1-1 ("Lehman Dec.") at 131.

Plaintiffs challenge the Horne declaration and the Lehman affidavit as inadmissible because they "contain hearsay, speculation, lack foundation, and neither were signed in this case and/or address the facts of this case." Motion at 10-11. Plaintiffs fail to include any legal support or analysis for any of these arguments. As Plaintiffs do not explain the basis for the hearsay, speculation, or lack of foundation objections, the Court is "largely reduced to guessing at the arguments underlying them." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021). The Court abstains from such guesswork and OVERRULES the objections.

Moreover, Plaintiffs' arguments about the utility of the evidence fail to address the nature of the declarations. The declarations are offered as expert testimony, and though Horne and Lehman do not purport to know the facts of the case, the declarations establish their qualifications to opine on Navy specifications for Naval ships and the type of work at issue here. *See* ECF 1-1 at 117-129, 131-32. As NASSCO explains, the testimony from Horne, Padgett, Herfel, and Severs collectively demonstrates that the Navy provided NASSCO with "precise and detailed specifications governing every aspect of the planning and repair of naval vessels." Response at 25. Plaintiffs also fail to challenge the declarations provided by Herfel, Severs, and Padgett, all of

7

whom indicate that they are aware of the facts of this case and provide relevant information regarding the ships and shipyards where Plaintiff Wayne Butterfield, Sr. worked.  Herfel Decl. ¶¶ 15-17; Severs Decl. ¶¶ 8-10; Padgett Decl. ¶¶ 6-9.  The declarations submitted in support of the government contractor defense are admissible.

### c. Sufficiency of the Evidence in Support of *Boyle* Defense

To avail itself of the *Boyle* defense, NASSCO must show (1) the United States approved "reasonably precise specifications" for NASSCO to follow; (2) NASSCO "conformed to those specifications;" and (3) NASSCO warned the United States about the dangers regarding use of equipment that were known to it but not to the United States.  *Boyle*, 487 U.S. at 512.  As detailed below, the evidence NASSCO submits establishes that it has a colorable federal defense.

#### i. The United States Provided Reasonably Precise Specifications

Under the first prong, NASSCO must show "a continuous exchange and back and forth dialogue between the contractor and the government," that amounts to "more than a cursory rubber stamp."  *Cabalce*, 797 F.3d at 731 (citing *Getz*, 654 F.3d at 861).  NASSCO has satisfied this element.

Severs explains that private shipyards were "not given independent authority to deviate" from U.S. Navy regulations and had "no authority to impose standards and regulations on the performance of work other than expressly authorized by the Navy."  Severs Dec. ¶ 19.  He describes Navy ship repair operations at NASSCO as a "hand-in-glove relationship" between NASSCO and the Navy and testifies that "[a]t all times, the ships were under the command and control of the Navy."  *Id.* ¶ 22.  Padgett similarly explains that the work performed on the U.S. Navy vessels where Mr. Butterfield worked was done under the Navy's "full control" and "decision-making authority."  Padgett Dec. ¶¶ 17-19.  Herfel adds that NASSCO employees and subcontractors were required to remove insulation materials containing asbestos in accordance with U.S. Navy rules, regulations, and standards.  Herfel Dec. ¶¶ 75-76.

The evidence suggests that the Navy provided "reasonably precise specifications" to NASSCO for the work it provided the Government.  Herfel identifies the Navy's asbestos

8

1  handling protocols during the relevant times.  For example, NASSCO was subject to NAVSHIPS
2  Notice 9390 (detailing safety and control procedures for installing and ripping out asbestos);
3  Chapter 9390 of the Naval Ship Systems Command Technical Manual (providing safety
4  precautions for handling asbestos containing thermal insulation); and Military Standard 769
5  (requiring restoration with asbestos free materials).  Herfel Dec.  ¶¶ 71-76.

6       Severs also details the strict standards promulgated by the U.S. Navy for removing and
7  disposing of asbestos materials.  He points to NAVSEA Standard Item 009-10 and SUPSHIP
8  regulations, which "spelled-out [sic] exactly how contractors are to safely deal with asbestos-
9  containing materials . . . [and] are designed to protect all persons who might be exposed to toxins
10  aboard ships . . ."  Severs Dec. ¶ 18.  Severs explains that "NASSCO did not have any discretion
11  relative to the creation or implementation of the [asbestos] standards and the shipyard could not
12  deviate from the standards, even if they proved inadequate."  *Id.* ¶ 18.  The regulations governing
13  the handling of asbestos also included "Naval Ships Technical Manual, Chapter 9390; Naval Ships
14  Technical Manual, Chapter 635; NAVSHIPS Instruction 5100.26; NAVMAT 5100.19;
15  NAVSHIPINST 6260; [amd] BUMED 6260."  *Id.* ¶ 22.  As Severs testifies, "[t]he Navy specified
16  in precise detail the repair tasks that were to be performed and issued safety protocols for the
17  performance of shipboard activities, including the handling of toxic substances, such as asbestos."
18  *Id.*  He adds, "[t]here was no margin for unauthorized deviation from government specifications
19  and directives . . . for the handling of toxic substances aboard naval vessels . . ."  *Id.*

20       Additionally, Padgett testifies that "[a]ll Navy vessel construction, assembly, overhaul,
21  repair, modernization, and maintenance work performed at NASSCO [and by NASSCO] was
22  conducted in accordance with Navy Military Specifications [] and under the direct supervision of
23  United States Navy Personnel."  Padgett Dec. ¶¶ 11-12.  He explains that the Navy "directed all
24  aspects" of work associated with Navy vessels, that the Navy was "in full control of, and dictated
25  the type of work to be done and the equipment or materials to be removed," and that the Navy
26  "retain[ed] ultimate decision-making authority."  *Id.* ¶¶ 16-17.  Any deviation from Navy Military
27  Specifications "requires specific and express written approval from the Navy."  *Id.* ¶ 19.

28       Plaintiffs attempt to narrowly construe the federal contractor defense, arguing that none of

the evidence shows that the Government prevented NASSCO from decontaminating employees or directed them not to decontaminate. ECF 69 ("Reply") at 2, 4. However, as the Ninth Circuit explained in *Leite*, "[i]t's enough under *Getz* that the Navy exercised its discretion by prescribing certain [actions] and prohibiting others without its express approval." 749 F.3d at 1123. And contrary to Plaintiffs' argument, NASSCO "need not prove that the Navy would have forbidden it" to decontaminate employees. *Id.* Under *Boyle*, "government discretion, rather than dictation [of whether a company can warn or the precise contents of a warning] is the standard." *Getz*, 654 F.3d at 867 (holding that the Government's exercise of discretion "necessarily 'conflicts' with the Contractor's 'duty to warn under state law'" where the Army "considered, reviewed, and determined which warnings to provide"). The evidence presented here shows that the Navy "considered, reviewed, and determined" the protocols for employees operating with asbestos materials on its ships. *See id.*

Thus, considering the uncontroverted evidence provided by NASSCO, the first element of *Boyle* is satisfied. *See, e.g.*, *Leite*, 749 F.3d at 1123 (finding the first *Boyle* prong met by evidence showing the Navy was "directly involved in preparing" safety manuals for the handling of asbestos and that contractors could not include warnings beyond those approved and required by the Navy); *Getz*, 654 F.3d at 866 (the government contractor defense is not limited to "instances where the government forbids additional warning or dictates the precise contents of a warning").

              ii.   NASSCO's Conformity with Specifications

Plaintiffs do not appear to challenge the second and third elements of *Boyle*, but regardless, Defendant has met its burden. The second element requires conformity with the Government's specifications. That is, NASSCO must show that a federal officer had "direct and detailed control" over it. *Wilgenbusch*, 2019 WL 13201904, at *3 (citing *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992)). Such control may exist where "the government consistently monitors a contractor's performance; requires it to comply with specifications; [and] performs tests to ensure compliance." *Id.* (citation omitted). Continued acceptance of a military contractor's service is valid evidence that the contractor's services conformed to the military specifications. *See Getz v. Boeing Co.*, 690 F. Supp. 2d 982, 993-94 (N.D. Cal. 2010), *aff'd*, 654

F.3d 852 (9th Cir. 2011).

As detailed by Padgett and Severs, the Navy guidelines controlled NASSCO's handling of asbestos. Padgett explains that all work was done "in conformance with military specifications, and under Navy supervision, requirements, and oversight." Padgett Dec. ¶ 59. Herfel testifies that ships being repaired by NASSCO were "in strict compliance with the ship repair specifications. Changes in the specifications could not be made without the specific approval of the U.S. Navy." Herfel Dec. ¶ 66. Severs also explains that NASSCO was "required to fully comply with all contracts, plans and specifications the U.S. Navy set forth." Severs Dec. ¶ 21. The U.S. Navy had "detailed specifications . . . dictating asbestos handling protocols, which mandated compliance with Navy guidelines for the handling of asbestos-containing materials encountered during repair operations." *Id.* ¶ 16(a). Severs further testifies that "a failure to comply with naval regulations could result in the rejection of work performed" and that "[a]ny and all warnings related to the performance of shipboard work were specified by the Navy and complied with by NASSCO." *Id.* ¶ 22. Any "discrepancies in the handling of hazardous waste by military contractors aboard military vessels [would] be the subject of notification and corrective action measure." *Id.* ¶ 21. "Strict compliance with all work specifications, including those standards and regulations related to the display of hazard information, was mandatory" and "[n]on-conforming work was not accepted by the Navy." *Id.* ¶ 22.

Compliance was further enforced by the "presence of U.S. Navy personnel," including representatives of SUPSHIP, a Navy Port Engineer, and ship officers, supervisors, and crew, who would direct and supervise NASSCO's repairs. *Id.* ¶ 16(b). The Navy "mandated compliance with Navy guidelines for the handling of asbestos-containing materials." *Id.* ¶ 16(a). Severs explains that Navy engineers were "continuously engaged" and helped "ensure full satisfaction" with the repair and modernization processes. *Id.* ¶ 16(c).

Plaintiffs appear to conflate the "causal nexus" requirement of the officer removal statute with the elements of the *Boyle* defense. Plaintiffs argue that NASSCO failed to comply with NAVSHIPS Instruction 5100.26, which directs NASSCO to take certain steps to decontaminate employees when performing insulation work. Reply at 5 (citing Compl. ¶ 170; Bessette Dec., Ex.

11

B at 29). Although Plaintiffs frame their argument as going to the causal nexus element of the officer removal statute, the Court understands Plaintiffs to challenge the second *Boyle* factor because Defendants failed to conform to the U.S. Navy's specifications. However, the Ninth Circuit makes clear that "[a]t this stage, [NASSCO] doesn't have to prove that its government contractor defense is in fact meritorious." *Leite*, 749 F.3d at 1124. That is, NASSCO "need not win [its] case before [it] can have it removed." *Id.* (citing *Willingham v. Morgan,* 395 U.S. 402, 407 (1969)). Moreover, testimony that NASSCO's work would not have been accepted without compliance with Navy specifications, that any deviations from Navy specifications would have required written approval, and that the Navy oversaw operations on the ships satisfy the second element at this stage. *See id.*

### iii. Element 3 – NASSCO warned of any dangers known to it but not U.S.

Finally, as to the third *Boyle* element, the declarations of Herfel and Horne indicate that the Navy was aware of a connection between asbestos and cancer. Response at 25-26; Horne Dec. ¶ 16; Herfel Dec. ¶¶ 78-80; Severs Dec. ¶ 4. There is no indication at this point that NASSCO knew more than the federal government about the risks of using asbestos. *See Leite*, 749 F.3d at 1124 (finding that evidence that "the Navy at all times knew at least as much about asbestos hazards as the equipment manufacturers" was sufficient to satisfy the third *Boyle* element). Therefore, there is no indication that NASSCO knew of any dangers not known to the United States, and the third element of the *Boyle* defense is satisfied.

Overall, NASSCO presents sufficient evidence to show a colorable government contractor defense at this stage. The Court turns next to whether a causal nexus exists between actions pursuant to a federal officer's directions and Plaintiffs' claims.

### B. Causal Nexus

"To show that it was acting under the direction of a federal officer, Defendant [ ] must show that a federal officer had 'direct and detailed control' over it." *Ballenger v. Agco Corp.*, 2007 WL 1813821, at *3 (N.D. Cal. June 22, 2007) (citations omitted). The same evidence showing that NASSCO's actions were done at the direction of a federal officer can support the

12

claim that there is a causal connection. *See Leite*, 749 F.3d at 1124 ("Based on the same evidence, [defendant] has also proved by a preponderance of the evidence that a causal nexus exists between plaintiffs' claims and the actions [defendant] took at the direction of a federal officer"). As in *Leite*, the "very act that forms the basis of plaintiffs' claims," NASSCO's failure to decontaminate its employees from asbestos hazards, "is an act that [NASSCO] contends it performed under the direction of the Navy." *Id.* NASSCO contends that it "did not have any discretion" regarding asbestos standards, and the shipyard "could not deviate from [Navy] standards, even if they proved inadequate." Severs Dec. ¶ 18.

Ultimately, NASSCO may fail in its attempt to utilize the government contractor defense – indeed, the Navy may not have had anything to do with NASSCO's failure to decontaminate its employees. But whether NASSCO's actions were "outside the scope" of its official duties is a question for federal courts to determine. *See Leite*, 749 F.3d at 1124.

## IV. CONCLUSION

For the foregoing reasons, Defendant has satisfied its burden of establishing subject matter jurisdiction under the federal officer removal statute. Accordingly, the Court **DENIES** Plaintiffs' motion to remand this case.

**IT IS SO ORDERED.**

Dated: December 15, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

13